UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

COLLEENA S. YEOMAS,

        Plaintiff,

       v.                                          **DECISION AND ORDER**
                                                                     18-CV-6537S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

      1.      Plaintiff Colleena S. Yeomas brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for supplemental security income and disability insurance benefits under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her applications with the Social Security Administration on June 9, 2015. Plaintiff alleged disability beginning February 12, 2014, due anxiety, depression, sciatic nerve problems, unstable left foot and ankle, and pain in her left shoulder and neck. Plaintiff's applications were denied and she thereafter requested a hearing before an administrative law judge ("ALJ").

      3.      On November 17, 2016, ALJ David J. Begley held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Carly Coughlin appeared and testified. (R.[1] at 38-73.) At the time of the hearing, Plaintiff was 36 years old with a 10th grade education and past work experience as a home health aide.

---

[1] Citations to the underlying administrative record are designated as "R."

4. The ALJ considered the case *de novo* and, on May 11, 2017, issued a written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[2] (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 17.) Plaintiff filed a response on August 7, 2019 (Docket No. 18), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted and Defendant's motion is denied.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842, 852 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's May 11, 2017, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119, 126-127 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant

3

> has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66, 70 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 12, 2014, the alleged onset date. (R. at 20.) At step two, the ALJ found that Plaintiff has the severe impairments of osteoarthritis (multiple sites), obesity, anxiety and depression. (R. at 21.) At step three, the ALJ found that Plaintiff does not

have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with certain exceptions:

> [Plaintiff] should avoid climbing ladders, ropes and scaffolding. She is limited to occasional pushing, pulling, and occasional overhead reaching. [Plaintiff] should avoid concentrated exposure to extreme cold, and avoid hazardous machinery, unprotected heights and open flames as well as slippery and uneven surfaces. She is limited to simple, routine and repetitive tasks. [Plaintiff] is limited to working in a low[-]stress job, defined as being free of fast-paced production requirements, no hazardous conditions and only occasional decision[-]making required and only occasional changes in the work setting. She is limited to occasional interaction with coworkers and supervisors [and] can have no interaction with the general public.

(R. at 23.)

13. At step four, the ALJ found Plaintiff is unable to perform past relevant work. (R. at 31.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 31-32.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 32-33.)

14. Plaintiff argues that the Commissioner's denial of benefits is not supported by substantial evidence because (1) the ALJ relied on VE testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT"); (2) the physical RFC determination is not supported by any medical opinion evidence; and (3) the Appeals Council erred in declining to review the ALJ's decision in light of additional evidence submitted to it. (Docket No. 12 at 18-25.) Each argument is addressed in turn.

15. Plaintiff first contends that the ALJ erred by failing to resolve an apparent conflict between the VE's testimony and the DOT. Specifically, Plaintiff points out that the VE's identification of available jobs, each of which the DOT lists as requiring "frequent reaching", conflicts with an RFC limitation to only "occasional overhead reaching". Plaintiff argues that the ALJ's failure to identify and resolve this conflict requires remand.

16. Defendant argues that the ALJ did not err in relying on the VE's testimony because any apparent conflict was affirmatively resolved at the hearing when the VE "clarified that a person with a limitation to occasional overhead reaching but no other reaching limitation could perform the jobs cited." (Docket No. 17-1 at 18.)

17. At step five, the burden of proof shifts to the ALJ to "show that there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). At this point, the ALJ must determine whether there are a significant number of jobs available to a claimant with the RFC limitations assessed. See Heckler v. Campbell, 461 U.S. at 460; see also 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

18. In making this determination, the ALJ "'relies primarily' on the [DOT] … but 'may also use vocational experts to resolve complex vocational issues.'" Lockwood v. Comm'r of Soc. Sec. Admin., 914 F.3d 87, 91 (2d Cir. 2019) (quoting SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). When relying on a vocational expert's testimony to support a denial of disability benefits, the ALJ has "an affirmative responsibility to ask about any possible conflict" between the VE testimony and the DOT and to "elicit a reasonable explanation" that resolves the apparent conflict. Id. (internal citations

omitted). If the ALJ fails to reconcile such a conflict, then the VE's testimony "cannot, then, represent substantial evidence" to support the ALJ's determination. Id. at 94.

19. Here, in response to the ALJ's question about what occupations would be available to a hypothetical individual of Plaintiff's background and assessed RFC, the VE identified three jobs: printed circuit board screener – DOT 726.684-110, small parts assembler – DOT 713.687-018, and document specialist – DOT 249.587-018. (R. at 70-71.) As Plaintiff points out, the DOT description of each of these three jobs requires frequent "reaching." See Dictionary of Occupational Titles 726.684-110, 1991 WL 679616; id. 713.687-018, 1991 WL 679271; id. 249.587-018, 1991 WL 672349.

20. Defendant argues that no unresolved conflict exists because the VE "explained that a person with a limitation to occasional overhead reaching but no other reaching restrictions could perform" the cited jobs. (Docket No. 17-1 at 19.) Defendant further argues that although the DOT does not differentiate between "the general category of reaching" and "the subcategory of overhead reaching," the DOT's narrative descriptions of these jobs "show the job duties reasonably do not include more than occasional overhead reaching." Id. at 20. Defendant's arguments fail.

21. "[B]ecause a 1985 Social Security Program Policy Statement defines 'reaching' as 'extending the hands and arms *in any direction*,'" a VE's testimony that a claimant with a restriction on overhead reaching can perform jobs that require occasional or frequent reaching "raises a potential inconsistency" with the DOT. Id. at 92 (emphasis in original) (quoting SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985)). This apparent conflict triggers the ALJ's affirmative duty to "elicit a reasonable explanation for and

resolve conflicts between the expert's testimony and the [DOT]." Pearson v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015) (internal citation omitted).

22. Here, in response to the ALJ's questioning, the VE testified that a hypothetical individual with Plaintiff's RFC would not be able to perform past relevant work as a home health aide. (R. at 70.) Before identifying jobs that would be available, the VE sought to clarify the hypothetical reaching restriction:

A   Your Honor, I'm just going over my notes, and I just have a question.

Q   Sure.

A   It was occasional pushing and pulling, occasional overhead reach.

Q   Correct.

A   Were there any other restrictions regarding reaching?

Q   That was it.

A   Okay. Yes, under this hypothetical, there would be the following occupations…

(R. at 70-71.)

23. Defendant points to this exchange as having "sufficiently resolved any apparent conflict" between the VE's testimony and the DOT criteria. However, this indicates only that the VE confirmed her understanding of the scope of the reaching restrictions posed by the ALJ's hypothetical before proceeding. The VE did not offer any explanation of how a limitation to "occasional reaching" is consistent with the frequent reaching criterion in the cited DOT job descriptions and the ALJ did not ask for one.

24. Defendant argues that further explanation is unnecessary because the DOT's descriptions of the jobs at issue "do not suggest that more than occasional

8

overhead reaching is required." (Docket No. 17-1 at 19.) However, the Second Circuit explicitly rejected this argument earlier this year under very similar circumstances.

25. In Lockwood, a claimant was found to have the RFC to perform activities that, among other restrictions, did not involve "overhead reaching". 914 F.3d at 89. At the claimant's hearing, a vocational expert testified that a person of the claimant's age, education, experience, and RFC could perform the physical tasks associated with three specific jobs that exist in significant numbers in the national economy, provided the claimant retained the ability to perform light work that did not require any overhead reaching. Id. The ALJ relied on the VE's testimony regarding available jobs at step five and determined that the claimant was not disabled as defined by the SSA. Id. at 89-90.

26. Lockwood appealed the Commissioner's final determination and argued that "the [ALJ] had relied on [the VE's] testimony without first probing into an apparent conflict between that testimony and [the DOT]." Id. at 90. The apparent conflict arose from the fact "that [the VE] had identified three jobs capable of being performed by a person who cannot reach overhead, but [the DOT's] descriptions of these jobs state without qualification that each requires 'reaching.'" Id.

27. The district court rejected Lockwood's argument, finding that "it is possible to reasonably infer that the vocational expert's testimony as a whole was based on, or informed by, her own experiences and observations of these jobs." Lockwood v. Comm'r of Soc. Sec., No. 6:16-CV-0648, 2017 WL 2656194, at *5 (N.D.N.Y. June 20, 2017). Based on this inference, the court held that any apparent conflict was "reconciled" by "[the VE's] testimony that Plaintiff would be able to perform [the identified jobs that each required frequent reaching] despite a limitation for avoidance of overhead reaching." Id.

9

28. The Second Circuit reversed the district court's ruling, holding that (1) "[t]estimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring 'reaching,' then, creates at least an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony;" (2) the ALJ's duty to resolve apparent conflicts between the DOT and VE testimony "is not fulfilled simply by taking the vocational expert at his word that his testimony comports with the [DOT] when the record reveals an apparent conflict;" and (3) because the ALJ "failed to reconcile [the VE's] testimony that a person with an overhead reaching limitation can perform the three [identified] jobs … that all … require 'reaching,'" that testimony "cannot, then, represent substantial evidence capable of demonstrating that [the claimant] can successfully perform work in the national economy." Id. at 92-94.

29. The Second Circuit emphasized that "[t]estimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring 'reaching'" raises "exactly the sort of inconsistency the [ALJ] should resolve." Id. at 92 (internal citations omitted). It "decline[d] to follow the District Court in 'inferring' that [the VE's] personal observations of the jobs about which she testified led her to conclude that [they] do not entail overhead reaching." Lockwood, 914 F.3d at 93 n.4. It

30. The Second Circuit also expressly rejected the Commissioner's argument that no conflict existed because "the [DOT's] narrative descriptions of the three jobs at issue contain no express reference to overhead reaching." Dismissing this argument an "invit[ation] to disregard the apparent conflict between [the VE's] testimony and the physical requirements enumerated in the [DOT's] occupational descriptions," the Second

Circuit noted that "[w]hile the [DOT's] narrative descriptions certainly make it conceivable that the three jobs [the VE] identified do not require overhead reaching, the Commissioner bore the burden of showing that [the claimant] is actually capable of performing those jobs." Id. at 93. It further noted that

> It may well be that the apparent conflict between Heller's testimony and the [DOT] is susceptible to easy resolution—if, for example, the reaching involved in the three jobs at issue consists exclusively of lateral or downward reaching. But it is not our role to speculate as to how or whether that conflict might have been resolved had the Commissioner carried out her responsibility to probe such matters.

Id. at 94.

31. Here, the ALJ prefaced the VE's testimony by stating his blanket assumption that it would "be based on [the VE's] knowledge, education, training and experience moving consistent with the DOT unless" otherwise stated. (R. at 69.) The VE offered no information about the reaching requirements of the identified jobs as they are actually performed, nor did she delve into the DOTs narrative descriptions to identify some difference between overhead reaching and other types of reaching. Despite the lack of explanation about how a similarly-situated person with an overhead reaching limitation could perform those jobs, the ALJ did not ask any questions.

32. Nevertheless, in his written decision, the ALJ "determined that the vocational expert's testimony is consistent with the information contained in the [DOT]" and relied on it to determine that Plaintiff was not disabled. (R. at 32.) This is insufficient. See Lockwood, 914 F.3d at 92; see also Inoa v. Berryhill, No. 18-CV-163 (JPO), 2019 WL 1407487, at *4 (S.D.N.Y. Mar. 28, 2019) ("After identifying and inquiring into any apparent conflicts between VE testimony and DOT occupational definitions, an ALJ then 'must resolve the conflict by determining if the explanation given by the VE ... is

11

reasonable and provides a basis for relying on the VE ... testimony rather than on the DOT information.'") (quoting SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). Here, as in Lockwood, the ALJ's failure to resolve an apparent conflict between the VE's testimony and the DOT regarding Plaintiff's overhead reaching limitation requires remand.

33. Plaintiff next argues that the ALJ's physical RFC finding is not supported by substantial evidence because the ALJ gave little weight to all physical functional opinion evidence in the record. (Docket No. 12 at 20.)

34. A claimant's RFC reflects "what an individual can still do despite his or her limitations." Desmond v. Astrue, 2012 U.S. Dist. LEXIS 179805, at *72012 (N.D.N.Y. Dec. 20, 2012) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)). The ALJ will assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

35. "[U]nder certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, an ALJ permissibly can render a common[-]sense judgment about functional capacity even without a physician's assessment." Wilson v. Colvin, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Moreover, where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017). Absent such circumstances however, an ALJ is generally "not qualified to assess a claimant's RFC on the basis of bare medical findings." Wilson, 2015 WL 1003933, at *21; see also Goble v. Colvin, No. 15-CV-6302 CJS, 2016 WL 3179901, at *6 (W.D.N.Y. June 8, 2016) ("[T]he ALJ's RFC determination

must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence.") (collecting cases).

36. The record demonstrates this is not a case where the medical evidence shows "only minor physical impairments" such that ALJ Begley could permissibly "render a common-sense judgment about [Plaintiff's RFC]." See Wilson 2015 WL 1003933, at *21. Between the alleged onset date and the ALJ's decision, Plaintiff underwent surgery on her left foot and leg (November 13, 2014, (R. at 398)) and two surgical procedures on her right knee, namely an arthroscopy with debridement and lateral release on May 5, 2016 (R. at 637), and an arthrotomy with osteochondral allograft on January 10, 2017 (R. at 650). The record also indicates that Plaintiff complained of persistent, limiting pain in her left shoulder that was treated with physical therapy, epidural steroid injections, nonsteroidal pain medications, muscle relaxers, and narcotic pain medications. (R. at 407.) In addition, Plaintiff underwent a left shoulder arthroscopy with superior labral anterior posterior lesion repair sometime in 2014 (R. at 572, also referenced at 323, 365) as well as a series of unsuccessful ganglion block injections, followed by an ultrasound-guided intra-articular injection of the left shoulder on April 24, 2015 (R. at 321-22).

37. This is also not a case where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity [such that] a medical source statement or formal medical opinion is not necessarily required." See Monroe, 676 F. App'x at 8. Here, the SSA found that consultative examinations (both mental and physical) were necessary because "[a]dditional evidence is required to establish current severity of the individual's impairments." (R. at 78.) In other words, the record was insufficient to make a disability determination without consultative exams and opinions.

38. At the request of the SSA, Dr. Harbinder Toor performed a consultative physical exam on July 31, 2015. (R. at 471-76.) Dr. Toor noted that Plaintiff was in moderate to marked pain, had an abnormal limping gait, and had difficulty changing for the exam and getting out of her chair. (R. at 471.) Dr. Toor opined that Plaintiff "has moderate to marked limitation standing, walking, sitting, bending, and lifting" and indicated that "pain interferes with her balance." Id. He further opined that Plaintiff "has moderate to marked limitation doing fine motor activity with the left hand or pushing, pulling, lifting, and reaching with the left shoulder" along with "moderate limitation twisting of the cervical spine." Id. Dr. Toor also noted that Plaintiff could be re-evaluated in a few months after she completely recovered from her recent foot and leg surgery. Id.

39. The ALJ assigned little weight to both Dr. Toor's evaluation and his medical opinion, finding both to be "inconsistent with the claimant's longitudinal treatment records showing some improvement following her left leg and left foot surgery." (R. at 28-30.) The ALJ determined that Plaintiff's presentation during the consultative exam "contrasts sharply with her presentation to her treating doctor during her follow up visits." (R. at 28.) The ALJ added, "[i]n fact, the claimant was weight bearing and she was weaned off her boot. She was able to ambulate without any gait aids and she had almost normal strength in her left extremities." (R. at 28-29.)

40. The ALJ's rejection of Dr. Toor's opinion leaves a gap in the record, which lacks any other medical source opinion regarding physical limitations. See Guttierez v. Berryhill, 333 F. Supp. 3d 267, 271 (W.D.N.Y. 2018) ("Regardless of whether the ALJ properly discounted this opinion, she created a gap in the record when she rejected the only opinion as to [Plaintiff's] mental ability to perform work-related functions on a regular

14

and continuing basis.")  The remaining treatment notes from her multiple procedures generally contain bare medical findings that do not explain how Plaintiff's foot, leg, knee, and shoulder impairments affect her physical ability to perform work-related functions.

41. Of particular concern is the fact that Plaintiff endorsed limitations in her ability to sit, stand, and walk for extended period of time, yet no such limitations are incorporated in the RFC.  In its initial disability determination, the SSA found that Plaintiff had exertional limitations that restricted her ability to sit, walk, and stand.  (R. at 81.) Specifically, Plaintiff could sit (with normal breaks) for 6 hours out of an 8-hour workday and could stand and/or walk for a total of 2 hours in an 8-hour workday.  Id.  Both Dr. Toor and physician's assistant David Terp had assessed some limitations on Plaintiff's ability to sit/stand/walk, to which Plaintiff also attested.  (R. at 329, 475, 499.)  During the hearing, which lasted approximately one hour, Plaintiff "need[ed] to stand up" at one point during her testimony and later asked if she could lean against a wall.  (R. at 46, 62.)

42. The ALJ acknowledged that "evidence that [Plaintiff] underwent surgery certainly suggests that her symptoms were severe and limiting" but found the medical evidence of record to be "inconsistent" with Plaintiff's allegations of disabling and debilitating problems.  (R. at 26.)  Having given little weight to the opinions of Dr. Toor and P.A. Terp, the ALJ noted that Plaintiff "alleged a severely limited ability to lift, stand, walk, sit, climb stairs, squat and reach" and testified that she "could stand for [only] 10 minutes before taking a break [to] sit for 30 minutes," but similarly found these allegations to be not entirely consistent with the objective medical evidence.  (R. at 24.)

43. Specifically, the ALJ noted that despite some lingering "limitations with ankle instability and pain … [Plaintiff was weight[-] bearing and she had almost full

15

strength" after her foot and leg surgery in November 2014. Id. The ALJ also found that the objective medical evidence failed to support the degree of shoulder pain that Plaintiff alleged. On April 13, 2015, Plaintiff presented with excruciating pain and spasms in her shoulder blades and upper back after having unsuccessful symptomatic ganglion blocks. (R. at 403.) Referencing this appointment, the ALJ "carefully note[d]"

> that the claimant's [MRI] did not reveal significant abnormal findings despite her complaints. There was no evidence of cuff tearing and the MRI showed some interstitial signal and findings of her posterior larval[3] repair. [Plaintiff's] doctor noted that her MRI is consistent with a previous labral repair and some cystic changes at the greater tuberosity but not consistent with the amount of extreme pain elicited by the claimant. The claimant was discharged from Dr. Hadian's office as there was nothing further they could offer her.

(R. at 26.)

44. The ALJ fails to mention that Plaintiff underwent an ultrasound-guided intra-articular injection of the left shoulder for shoulder pain differentiation that same day. (R. at 321-22.) The ALJ also fails to explain that Dr. Hadian had provided treatment in the form of sympathetic ganglion blocks, which proved unsuccessful. (R. at 400, 406.)

45. Here, the ALJ created a gap in the record when he gave little weight to Dr. Toor's opinion and the results of his consultative physical exam. Rather than obtaining a second consultative exam and opinion, as Dr. Toor noted would be prudent (R. at 475), the ALJ proceeded to make a disability determination based solely on his analysis of the objective medical evidence. This is not acceptable. See Burgess v. Astrue, 537 F.3d 117, 131 (2d Cir. 2008) ("The ALJ is not permitted to substitute his own expertise or view

---

[3] The ALJ meant "labral" repair.

16

of the medical proof for the treating physician's opinion or for any competent medical opinion.") (internal citations omitted).

46. Finally, Plaintiff argues that the Appeals Council erred in failing to consider additional evidence submitted to it. Defendant argues that the additional evidence does not undermine the ALJ's decision and therefore the Appeals Council properly found no grounds for review. Defendant's argument prevails.

47. The Appeals Council will review a case if it receives additional evidence—for which there is good cause for not submitting earlier—that a claimant shows is new, material, chronologically relevant, and has a reasonable probability of changing the outcome of the Commissioner's decision. See 20 C.F.R. §§ 404.970(a)(5), (b), 416.1470(a)(5), (b).

48. Here, the Appeals Council found that the additional evidence submitted, the bulk of which postdated the ALJ's decision, did not show a reasonable probability of changing the outcome of the decision. (R. at 2.) Plaintiff contends that the additional evidence "obviously could have *reasonably* altered the outcome of the ALJ's decision, if credited" (Docket No. 12-1 at 24) but this is not the standard. Plaintiff has not shown good cause for not providing the additional evidence earlier, nor has she demonstrated it has a reasonably probability of changing the outcome of the ALJ's decision. Absent such a showing, it was not error for the Appeals Council to decline review.

49. For the foregoing reasons, this Court finds that the ALJ's disability determination, which was based on evidence that contained an unresolved apparent conflict with the [DOT's] authoritative guidance was not supported by substantial evidence. Remand is therefore warranted. On remand, the Commissioner is directed to

17

explore and resolve any apparent conflict regarding reaching limitations that exists between the DOT and the VE's testimony, and to further explain the physical RFC assessed. The ALJ should give particular consideration to whether some sit/stand/walk limitation is appropriate and whether any such limitation – if appropriate – would impact Plaintiff's ability to perform sedentary work. In giving such additional thought to Plaintiff's physical RFC determination, the ALJ is reminded that "evidence first submitted to the Appeals Council becomes part of the administrative record" and should be considered as such upon remand. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: December 12, 2019
Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge